IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

**OFELIA ROSAS-CARLOS**,                                    Case No.  6:14-CV-01441-SU

      Plaintiff,                                    **FINDINGS AND**
v.                                                                        **RECOMMENDATION**

**CAROLYN W. COLVIN,** Acting
Commissioner of Social Security
Administration,

      Defendant.

_____

SULLIVAN, United States Magistrate Judge:

      Plaintiff Ofelia Rosas-Carlos brings this action pursuant to the Social Security Act ("Act")

to obtain judicial review of a final decision of the Commissioner of Social Security

("Commissioner").  The Commissioner denied plaintiff's application for Title II disability insurance

Page 1 - FINDINGS AND RECOMMENDATION

benefits ("DIB") under the Act.  The federal court has jurisdiction to hear plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g) & 1383(c)(3).  For the reasons set forth below, the Commissioner's decision should be affirmed and this action should be dismissed.

## PROCEDURAL BACKGROUND

On July 27, 2010, plaintiff protectively filed an application for DIB benefits.  Tr., at 20; 153-59 (DIB application).  The Social Security Administration ("SSA") denied her application initially and upon reconsideration.  Tr., at 20; 98-102 (denial); 106-09 (denial on reconsideration).  On October 2, 2012, an administrative law judge ("ALJ") conducted a hearing, at which plaintiff testified with assistance from a Spanish language interpreter and was represented by counsel.  Tr., at 50, 52.  A vocational expert also testified at the hearing.  Tr., at 20, 50.  After the hearing, the vocational expert submitted additional vocational evidence, and the ALJ held  a supplemental hearing on November 29, 2012 for plaintiff's counsel to further question the vocational expert.  Tr., at 20, 40-49.  On December 18, 2012, the ALJ issued a decision finding the plaintiff not disabled within the meaning of the Act and denying her benefits.  Tr., at 20-35 (ALJ decision).  Plaintiff sought review of the ALJ's decision from the SSA's Appeals Council.  Tr., at 1-8 (appeal denial); Pl.'s Br., at 2.  When the Appeals Council denied plaintiff request for review, the ALJ's decision became the final decision of the Commissioner.  Pl.'s Br., at 2.  Plaintiff now seeks judicial review and requests that the district court reverse the ALJ's decision and remand the case for the payment of benefits.  Pl.'s Br., at 20.

## STATEMENT OF FACTS

Plaintiff was born in 1971 and was 40 years old at time of the October 2, 2012 ALJ hearing.  Tr., at 55, 153.  She alleges her disability began January 30, 2008, when she was 36 years old.  Tr.,

at 20, 153.  Plaintiff received her schooling in Mexico and has a sixth-grade education.  Tr., at 55.

She states that she is literate in Spanish but cannot read, write, speak, or understand English.  Tr.,

at 55. Plaintiff worked 13 years as a saw operator at a lumber mill until she was injured in a car

accident  that caused several of her impairments.  Tr., at 55-57, 82, 174-75, 213.  The record

indicates plaintiff has not worked since the 2008 car accident.  Tr., at 82.  Plaintiff states she is

disabled due to problems with her left shoulder including chronic rotator cuff syndrome, muscle

spasm of the trapezius, and adhesive capsulitis.  Pl.'s Br., at 1.  Plaintiff also states that she suffers

limitations associated with depression, chronic pain syndrome, daily headaches, and other

conditions.  Pl.'s Br., at 1, 14-15.  Plaintiff has a history of corrective surgeries on her left shoulder;

thyroid cancer, now in remission; thyroidectomy; and removal of a kidney which she states makes

her prone to urinary tract infections.  Tr., at 22, 220, 245, 257.

At the October 2, 2012 ALJ hearing, plaintiff testified that she suffered varying pain in her

left shoulder and head on a daily basis and took vicodin pain medication 3-4 times per day for the

pain.  Tr., at 58-60.  Plaintiff testified that on average, she experienced pain at level 7 on a scale of

1 to 10, with 1 representing no pain and 10 pain that would require her to go to the hospital.  Tr., at

60.  Plaintiff said that after taking her vicodin, her pain level would generally decrease to level 2 for

3-4 hours.  Tr., at 64-65.  She told the ALJ that vicodin sometimes made her tired but only at times

when her pain was more intense.  Tr., at 61, 66-67.  In those instances, taking vicodin would make

her lie down and sleep for 2-3 hours.  Tr., at 61, 66.  She testified that these episodes of drowsiness

occurred 3-4 times per week.  Tr., at 62.   Plaintiff testified that she could only stand for a half an

hour at a time before having to sit down and sit for an hour at a time before leaving her chair.  Tr.,

at 60-61.  Plaintiff testified at the hearing that she had no limitations on her ability to walk around,

saying, "I can walk around all day."  Tr., at 61.  However, in her application for benefits, plaintiff stated that she could walk about one block before needing to rest.  Tr., at 218.  Plaintiff testified that she was right-handed and did not have difficulty using her right arm and hand except when the arm got tired from her reliance on it.  Tr., at 62.

At the hearing and in her application for benefits, plaintiff described her daily activities. Plaintiff stated that she lived with family and she would drive her daughter,  who was 17 years old at the time of the hearing, to and from school every day and to her daughter's volunteer work at a hospital.  Tr., at 62-64, 213, 216.  Plaintiff stated she would drive to stores with her daughter and they would go grocery or clothing shopping about twice a week.  Tr., at 62, 64, 216.  Plaintiff testified that she performed household chores including washing and folding clothes, washing dishes, and sweeping floors.  Tr., at 62, 65, 214-16.  However, sometimes, when her arm hurt, her husband would have to help her and her daughter would brush her hair for her.  Tr., at 62.  Plaintiff testified that she attended church every Sunday, and occasionally, on Fridays as well.  Tr., at 63-64.  Plaintiff also described social activities including walking around the mall with her daughter and participating in family get-togethers although the noise aggravated her headaches. Tr., at 64, 218.

## STANDARD OF REVIEW

In order to obtain social security disability benefits, a claimant must demonstrate that she is disabled under the law.  *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986).  The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

An ALJ determines whether a claimant is disabled based on  a five-step sequential analysis.

Page 4 - FINDINGS AND RECOMMENDATION

*Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 416.920(a), 404.1520(a)(4).  If at any point in the evaluation, the ALJ finds the claimant is  not disabled, the ALJ denies benefits and need not proceed to the next step.  The steps are as follows.  First, the ALJ evaluates whether the claimant is engaged in "substantial gainful activity."  *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 416.920(a), 404.1520(a)(4).  If so, the claimant is not disabled.  Otherwise, the analysis proceeds to the second step.   At the second step, the ALJ determines whether the claimant has a "medically severe impairment or combination of impairments."  *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 416.920(a), 404.1520(a)(4).  If the claimant lacks a severe impairment, the ALJ will find she is not disabled.  At step three, the ALJ resolves whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity."   *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 416.920(a), 404.1520(a)(4).  If so, the claimant is presumptively disabled.  *Yuckert*, 482 U.S. at 141. If not, the ALJ determines claimant's residual functional capacity ("RFC"), which assesses claimant's abilities, given her limitations, to meet various demands in a work setting.  20 C.F.R. §§ 416.945(a)(1), 404.1545(a)(1).  At step four, based on claimant's RFC, the ALJ determines whether the claimant can still perform "past relevant work."  20 C.F.R. §§ 416.920(a), 404.1520(a)(4).  If the claimant can work, she is not disabled.  If she cannot perform past relevant work, the burden of proof shifts from the claimant to the ALJ.  *Howard*, 782 F.2d at 1486.  At step five, the ALJ must establish that the claimant can perform other work that exists in significant numbers in the national and local economy.  *Id*.; *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 416.920(a), 404.1520(a)(4).  If the ALJ meets this burden, the ALJ may find the claimant not disabled and deny her benefits.  20 C.F.R. §§

416.966, 404.1566.

Once a decision is final, a claimant may seek judicial review, as plaintiff has done here. The Social Security Act empowers the district court to affirm, modify, or remand a decision for payment of benefits or for further proceedings. 42 U.S.C. §§ 405(g), 1383(c)(3). The ALJ, not the district court, is responsible for assessing credibility, resolving conflicts in medical testimony, and for construing ambiguities in the record. *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Accordingly, the "court may not substitute [its] judgment for that of the ALJ." *Garrison*, 759 F.3d at 1010. If the ALJ bases his decision on proper legal standards and it is supported by substantial evidence in the record, the court must affirm the decision. *Id.*, at 1009; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance" of the evidence. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *see Richardson v. Perales*, 402 U.S. 389, 401 (1971). It "is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter*, 504 F.3d at 1035. "[W]hen evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

## THE ALJ'S FINDINGS

The ALJ followed the five-step evaluation process outlined above, and found plaintiff was not disabled. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr., at 22. At step two, the ALJ determined that plaintiff had the following severe impairments, all of them relating to her shoulder injury: left shoulder adhesive

capsulitis, status-post SLAP repair, and bicep tendolysis.  Tr., at 22.  At step three, the ALJ determined that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment.  Tr., at 23.  Finding that plaintiff did not establish presumptive disability at step three, the ALJ continued the sequential evaluation process to determine how plaintiff's impairments affected her ability to work.  Tr., at 23.  The ALJ determined that plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b)."  Tr., at 23.  Specifically, the ALJ found plaintiff had no limitations in sitting, standing, or walking and could lift 20 pounds occasionally and 10 pounds frequently.  Tr., at 23.  The ALJ determined that plaintiff could not use her left arm to perform overhead reaching or sustained extension away from the plane of her body but had no limitations in the use of her dominant right arm and hand.  Tr., at 23.  The ALJ also found that plaintiff was precluded from any job that required reading, writing, or speaking with the public in English.  Tr., at 23.  Plaintiff could not be exposed to hazards such as unprotected heights or large moving equipment, and could never climb ladders, ropes, or scaffolds or crawl or kneel.  Tr., at 23. The ALJ concluded that plaintiff could only occasionally stoop and crouch and should work in a setting where she could take occasional extra restroom breaks.  Tr., at 23.

At step four, based on this RFC and the testimony of a vocational expert, the ALJ found the plaintiff unable to perform any of her past relevant work.  Tr., at 32.  At step five, the ALJ determined that plaintiff, despite her impairments, could perform other jobs that existed in significant numbers in the national and local economy.  Tr., at 33.  The ALJ gave the examples including  shipping and receiving weigher, order caller, and egg handler.  Tr., at 33-34.  The ALJ

concluded that plaintiff was not disabled under the Act.  Tr., at 34-35.

## DISCUSSION

Plaintiff seeks reversal of the ALJ's decision, arguing the ALJ erred in determining plaintiff's RFC and finding she was not disabled.  Pl.'s Br., at 1, 13.  Plaintiff alleges that (1) the ALJ improperly discredited plaintiff's testimony; (2) the ALJ unreasonably rejected the medical opinion of plaintiff's treating physician, Dr. Martin Hurtado; and (3) the ALJ failed to meet her burden of showing plaintiff retained the RFC to perform work in the national economy.  Pl.'s Br., at 1, 13. Plaintiff argues that both plaintiff's testimony that she must lie down 3-4 times a week for 2-3 hours at a time and Dr. Hurtado's opinion that plaintiff would miss an average of more than five days of work per month compel a finding of disability.  Pl.'s Br., at 19-20; Reply, at 11.  On that basis, plaintiff argues this case should be remanded for immediate payment of benefits. Pl.'s Br., at 19-20; Reply, at 11. In the alternative, plaintiff argues the case should be remanded for further proceedings. The Commissioner argues that the ALJ gave sufficient reasons for discrediting both plaintiff's testimony and Dr. Hurtado's opinion and that the ALJ reasonably concluded plaintiff was not disabled.  Def.'s Br., at 2, 5, 9.  For the reasons stated below, the Commissioner's decision should be affirmed.

### I.  The ALJ's Assessment of Plaintiff's Testimony

In assessing the credibility of a claimant's testimony, an ALJ must follow a two-step analysis. First, the ALJ must determine "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other

symptoms alleged." *Garrison*, 759 F.3d at 1014; *Lingenfelter*, 504 F.3d at 1036.  That said, the

claimant "need not show that her impairment could reasonably be expected to cause the *severity* of

the symptom she has alleged; she need only show that it could reasonably have caused some degree

of the symptom." *Lingenfelter*, 504 F.3d at 1036 (emphasis added); *Smolen v. Chater*, 80 F.3d 1273,

1282 (9th Cir. 1996).  If the claimant provides sufficient medical evidence to satisfy the first test and

there is no evidence of malingering, the ALJ can discredit "claimant's testimony about the severity

of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*,

759 F.3d at 1014-15; *Smole*n, 80 F.3d at 1281; *see Carmickle v. Soc. Sec. Admin.*, 533 F.3d 1155,

1160 (9th Cir. 2008).   At that point, the ALJ may consider a variety of factors in assessing

credibility, including:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for
> lying, prior inconsistent statements concerning the symptoms, and other testimony
> by the claimant that appears less than candid; (2) unexplained or inadequately
> explained failure to seek treatment or to follow a prescribed course of treatment; and
> (3) the claimant's daily activities.

*Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Smolen*, 80 F.3d at 1284; *see Navarro v.

Colvin*, 2015 WL 2401352, at *3 (D. Or. May 18, 2015).  The ALJ may also properly consider

factors such as the effectiveness of any pain medication, any side effects from prescribed

medications, and the claimant's ability to perform household chores.  *Orteza v. Shalala*, 50 F.3d 748,

750 (9th Cir. 1995); *Solorio-Cardenas v. Colvin*, 2015 WL 667559, at *3 (D. Or. Feb. 15, 2015).

Additionally, the ALJ may consider objective medical evidence in determining claimant's credibility,

as long as the ALJ does not reject claimant's testimony solely because it is not supported by

objective medical evidence as to her subjective symptoms. *Rollins v. Massanari*, 261 F.3d 853, 856-

57 (9th Cir. 2001); *Solorio-Cardena*s, 2015 WL 667559, at *3. "When evidence reasonably supports

either confirming or reversing the ALJ's decision, [the court] may not substitute [its] judgment for

that of the ALJ" and must affirm. *Ghanim,* 763 F.3d at 1163; *Batson v. Comm'r of Soc. Sec. Admin.*,

359 F.3d 1190, 1196 (9th Cir. 2004). Here, the ALJ applied the two-step analysis, and concluded

that "Ms. Rosas-Carlos's allegations [were] in general overstated" and not fully credible. Tr., at 28,

23-24.

### A. Step One: Determination of Underlying Impairment

At the first step, the ALJ examined the objective medical evidence to determine whether

plaintiff had impairments that could be reasonably expected to produce her alleged symptoms. Tr.,

at 23. "An individual's statement as to pain or other symptoms shall not alone be conclusive

evidence of disability. . . there must be medical signs and findings, established by medically

acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical

impairment" that "could reasonably be expected to produce the pain or other symptoms alleged."

42 U.S.C. § 423(d)(5)(A); *see* 20 C.F.R. § 404.1529(b).

At this stage of the analysis, the ALJ discredited several of the symptoms plaintiff described

in her testimony. At the hearing, plaintiff testified that she could only stand for a half an hour at a

time before having to sit down. Tr., at 60-61. She testified she could sit for an hour at a time before

having to leave her chair, and in her application for benefits, plaintiff stated that she could walk

about one block before needing to rest. Tr., at 60, 218. Plaintiff also testified that, on and off

through a typical day, the most she could lift comfortably using both hands together was a "gallon of milk." Tr., at 60. The ALJ determined that objective medical evidence did not establish any impairment that could reasonably be expected to produce these alleged limitations. The ALJ found that plaintiff's left shoulder conditions were her only impairment that produced lasting symptoms limiting her functioning. Tr., at 24, 26. The impairment was a "localized" and "purely mechanical disorder" that did not explain plaintiff's alleged difficulties in sitting, standing, and walking. Tr., at 24, 28. Nor did the impairment limit plaintiff's right dominant arm and hand, which the ALJ deemed "fully functional." Tr., at 24, 26. As for plaintiff's other reported conditions such as her past thyroid cancer, single kidney, urinary tract infections, and headaches, the ALJ concluded that these medical issues were "treated and controlled without lasting effects on her functioning." Tr., at 24. Accordingly, the ALJ discredited plaintiff's testimony that she experienced limitations in sitting, standing, walking, and lifting with her right hand.[1] Tr., at 24-25. The ALJ found the allegations were not supported by objective medical evidence.

Plaintiff argues the ALJ erred in this stage of the analysis, by failing to take into account the effects of three less severe impairments: plaintiff's headaches, her urinary tract infections, and her depression. Pl.'s Br., at 14-15. Plaintiff wrote, "There is no doubt that Ms. Rosas is primarily

---

[1] The ALJ discredited plaintiff's testimony about her ability to lift with both hands, because plaintiff failed to produce sufficient evidence of an underlying medical condition which could produce the symptoms. However, the Court notes that the record, including plaintiff's own testimony, contradicts her claim that she could only lift a gallon of milk with both hands. Plaintiff testified at the same hearing that, besides pain from overuse, she had no difficulty in using her right arm or hand. Tr., at 62. In addition, her treating doctor opined that she could lift 10-20 pounds with her right hand. Tr., at 460.

disabled by her chronic shoulder condition.  She did not claim these other conditions were, in themselves, disabling.  Nonetheless, they do contribute to her disability and should have been considered by the ALJ." Pl.'s Br., at 15.  Plaintiff is correct that the ALJ must consider the effects of all impairments in evaluating a claimant's testimony.  20 C.F.R. § 404.1523.  However, the ALJ did consider the non-severe impairments in evaluating plaintiff's testimony, and either accounted for them or concluded that they were "treated and controlled without lasting effects on her functioning."[2] Tr., at 24.  Even if the ALJ had found the headaches, depression, and urinary tract infections to all be symptomatic, plaintiff fails to explain how the impairments could reasonably have caused the symptoms at issue— limitations in standing, sitting, walking, and lifting with the right hand.  In fact, plaintiff concedes that "she does not have a condition that directly limits her ability to sit, stand and walk." Pl.'s Br., at 14.  Furthermore, at the hearing, plaintiff testified that, other than fatigue from overuse, she had no difficulty in using her right arm or hand.  Tr., at 62.  The ALJ did not err at step one of the analysis when she found no underlying medical condition supporting plaintiff's alleged limitations in sitting, standing, walking, and lifting with her right hand.

_____

[2]  The ALJ considered plaintiff's depression at length and determined that the medical record showed it was situational, symptomatic for about six months in 2010, and "controlled by medications without specific treatment" from a specialist.  Tr., at 23, 31-32.  As for plaintiff's headaches, the ALJ noted that plaintiff's treating physician had not diagnosed her with a specific headache disorder, and "no physician [had] arrived at a related diagnosis" explaining the headaches.  Tr., at 29.  Moreover, plaintiff testified she controlled her headache pain with vicodin.  Tr., at 29-30.  Regarding plaintiff's urinary tract infections, the ALJ found they were relatively infrequent (e.g., three occurrences in a seven-month period), and accounted for the impairment in the RFC by specifying that plaintiff was only capable of working a job that permitted her to take extra bathroom breaks.  Tr., at 31, 23.

The ALJ properly discredited this testimony.

**B.  Step Two: Clear and Convincing Reasons**

The ALJ considered plaintiff's remaining pain symptom testimony and the effects of her pain medication.  At the second step, after having found objective evidence of medical conditions that could cause a claimant's alleged symptoms, an ALJ must evaluate the credibility of those allegations. If an ALJ rejects a claimant's symptom testimony, she must provide "clear and convincing" reasons for doing so.[3]  *Carmickle v. Soc. Sec. Admin*., 533 F.3d at 1160.  Here, plaintiff argues that the ALJ failed to provide "clear and convincing" reasons for discrediting plaintiff's testimony, in particular, plaintiff's allegation that, 3-4 times a week, she would experience intense pain and have to take a vicodin and recline for several hours.  Pl.'s Br., at 13-14.  Plaintiff argues that if the ALJ had credited this testimony, the ALJ would have been required to find plaintiff disabled.  Pl.'s Br., at 19.

The ALJ provided several reasons for rejecting the allegation.  The ALJ rejected plaintiff's testimony on this point as "inconsistent."  Tr., at 28.  The ALJ concluded that plaintiff's testimony "that she sleeps when she uses [vicodin] for severe pain but not when she uses [the same] narcotics

---

[3]  The Commissioner argues the Court should apply a more deferential standard, the "substantial evidence" standard.  Def.'s Br., at 3 n.2.  However, absent "affirmative evidence the claimant is malingering," the standard is whether the ALJ provided "clear and convincing" reasons for rejecting the claimant's testimony.  *Carmickle*., 533 F.3d at 1160; *see Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989); *see also Garrison,* 759 F.3d at 1015, 1015 n.18 ("The government's suggestion that we should apply a lesser standard than 'clear and convincing' lacks any support in precedent and must be rejected"); *Webber v. Colvin*, 2015 WL 1810205, at *8 (D. Or. Apr. 17, 2015).  Here, neither the ALJ nor the Commissioner claim there is affirmative evidence plaintiff is malingering.  Accordingly, the Court must apply the "clear and convincing" standard.

for milder pain, the doses remaining the same, is implausible." Tr., at 28.  Plaintiff argues the ALJ misinterpreted plaintiff's testimony and that she actually testified that her pain, and not the vicodin, caused her to sleep most days.  Reply, at 4.  However, the hearing transcript does not support plaintiff's argument.  Instead, it shows more inconsistencies in plaintiff's testimony.  When the ALJ asked plaintiff if her vicodin pain medication caused any side effects, plaintiff responded, "It puts me to sleep." Tr., 58-59.  Later in the hearing, plaintiff described her daily routine, stating, "when my pain is really high I'll take my pill and that makes me, it puts me to sleep and I'll be knocked out." Tr., at 61.  When asked, plaintiff stated she was able to drive her daughter to school even when she was taking 3-4 vicodin in a day.  Tr., at 63.  Plaintiff explained that the vicodin put her to sleep but not every time she took it.  Tr., at 66-67.  The ALJ gave plaintiff an opportunity to explain her "implausible" statement that the medication put her to sleep but only sometimes.  The ALJ asked if it was, in fact, plaintiff's pain that caused the drowsiness and not the medication.  Tr., at 67.  At that point, plaintiff said yes and repeated that when she was in pain, she would take her pill and then sleep.  Tr., at 67.  Plaintiff attributes the inconsistencies in this testimony to plaintiff's inability to communicate in English and the general difficulty of obtaining testimony through a translator.  Reply, at 3.  However, at three different instances during her testimony, plaintiff clearly stated, without being prompted, that the vicodin caused her to become sleepy.  She only attributed the sleepiness to her pain when the ALJ suggested it.  In her decision, the ALJ did not misinterpret plaintiff's words, nor did she err in concluding that plaintiff's testimony about her almost daily naps was inconsistent and implausible.

Page 14 - FINDINGS AND RECOMMENDATION

Moreover, the ALJ provided other valid reasons for rejecting plaintiff's drowsiness claim. The ALJ noted that medical records did not mention plaintiff's alleged response to the vicodin, even though plaintiff testified that she had the debilitating reaction most days of the week.  Tr., at 28. Similarly, an examination of the medical records found no apparent mention of pain causing plaintiff to sleep for hours most days of the week.  In his medical opinion, plaintiff's treating doctor made no note of plaintiff needing to nap most days  due to either pain or medication.  Tr., at 28, 496-97, 460-61.  Rather, he stated that he encouraged plaintiff "to avoid daytime sleep to promote better circadian sleep pattern."  Tr., at 461.  The ALJ also noted that plaintiff's "reported daily activities give no indication of disruption from the need to nap for hours at a time most days, and instead indicate a wide range of activities."  Tr., at 28.  For instance, as noted by the ALJ, plaintiff testified that she drove her daughter to and from school every day, even on days when she had taken 3-4 vicodin to manage pain.  Tr., at 28, 63-64, 216.  The ALJ provided clear and convincing reasons for rejecting plaintiff's testimony about her need to nap for hours at a time most days.

The ALJ did not specifically discredit portions of plaintiff's testimony other than the testimony about drowsiness and limitations in sitting, standing, walking, and using her right hand. Moreover, plaintiff's other testimony was not inconsistent with the ALJ's determination that she was not disabled.   Although plaintiff testified that on an average day, her head and shoulder pain was at level 7 on a scale of 1 to 10, plaintiff testified that taking vicodin reduced her pain to level 2.  Tr., at 60, 64, 66.  She testified that after taking vicodin, she felt "[k]ind of like I don't have [the pain] and it's calm."  Tr., at 60.  Plaintiff testified she took vicodin 3-4 times a day.  Tr., at 58.  Based on

this testimony, the ALJ's reasons for concluding that plaintiff was managing her head and shoulder pain with the vicodin were based on clear and convincing evidence. Tr., at 24-25.

## II. The ALJ's Consideration of Dr. Hurtado's Medical Opinion

Plaintiff asserts that the ALJ improperly rejected Dr. Hurtado's medical opinion. Social Security Regulations define medical opinions as statements from physicians and other acceptable medical sources "that reflect judgments about the nature and severity" of a claimant's impairments, including symptoms, diagnoses, and claimant's physical or mental restrictions. 20 C.F.R. §§ 416.927(a)(2), 404.1527(a)(2). An ALJ must consider medical opinions submitted by a claimant, but the ALJ determines what weight to give them. 20 C.F.R. §§ 416.927(c); 404.1527(c). An ALJ generally accords greater deference to the opinions of treating physicians compared with those of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996); *Garrison*, 759 F.3d at 1012. Similarly, the opinion of a physician who has examined the claimant generally carries greater weight than that of a physician who has not done so. *Id.* If no other medical provider has contradicted the opinion of a physician who has treated the claimant, an ALJ must furnish "clear and convincing" reasons for rejecting the opinion. *Lester*, 81 F.3d at 830. When another doctor contradicts the treating doctor's opinion, the ALJ may reject the opinion after providing "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, at 830-31.

When weighing the opinion of a treating physician, social security regulations require an ALJ to evaluate whether it is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques" and consistent with other substantial evidence in the record.   20 C.F.R. §§ 416.927(c)(2); 404.1527(c)(2).  If so, the treating physician's opinion is accorded controlling weight. *Id*.  If not, the ALJ must consider the "length of the treatment relationship and the frequency of examination" as well as the "nature and extent of the treatment relationship."  *Id.*  The longer a doctor has seen a patient, the more likely she will "have obtained a longitudinal picture" and full understanding of the impairments.  *Id.*  In addition, the ALJ must still consider other relevant factors such as "the amount of relevant evidence that supports the opinion and the quality of the explanation provided" and "the consistency of the medical opinion with the record as a whole."  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); see 20 C.F.R. §§  416.927(c); 404.1527(c).  An ALJ may reject a treating physician's opinion when it conflicts with independent clinical findings or is inconsistent with the claimant's reported activities.  *Dunn v. Colvin*, 2015 WL 505265, at *5 (D. Or. Feb. 3, 2015) (citing *Orn*, 495 F.3d 625, 631-32 (9th Cir. 2007) and *Rollins*, 261 F.3d at 856).

The Court first considers the appropriate standard for assessing the ALJ's reasoning regarding Dr. Hurtado's opinion.   Here, it is undisputed that Dr. Hurtado was plaintiff's treating physician.  Where the opinion of a treating physician is contradicted by another doctor, the ALJ may reject the opinion only after providing "specific and legitimate reasons that are supported by substantial evidence in the record."  *Lester*, 81 F.3d at 830-31.  Otherwise, the standard is stricter, and the ALJ must provide "clear and convincing reasons."  *Id.*  Here, Dr. Hurtado's opinion conflicted with the opinion of state agency reviewing physician, Dr. Neal Berner.  Tr., at 25, 80-82.  In his September 25, 2012 opinion, Dr. Hurtado stated that plaintiff was diagnosed with chronic

rotator cuff syndrome, muscle spasm of the trapezius, probable adhesive capsulitis, depression, and chronic pain syndrome. Tr., at 460. Dr. Hurtado stated that plaintiff had lost range of motion in her "dominant arm," which would be her right arm.[4] Tr., at 460. He opined that plaintiff could lift up to 10-20 lbs with her right arm, but not even a 5-lb frying pan with her injured left arm. Tr., at 460. He did not state any other functional limitations in his opinion such as limitations on sitting, standing, or walking. Tr., at 460-61. When asked whether plaintiff would experience difficulty enduring a full 40-hour work week or concentrating on her work, or if she would miss workdays due to symptom flare-ups, Dr. Hurtado offered the same response: "If there is a position that does not require repetitive use of both arms (I cannot think of one) then she could work full time." Tr., 460-61, 463. However, Dr. Hurtado then opined that plaintiff would miss, on average, more than 5 workdays per month due to her medical conditions and symptoms. Tr., at 461, 463. By contrast, in his opinion, Dr. Berner did not indicate any need to regularly miss work. He opined that plaintiff could reach overhead with her left hand no more than occasionally but had no restrictions on handling, fingering, and feeling objects with her left hand. Tr., at 81. Dr. Berner opined that plaintiff had no restrictions to the use of her right arm and hand and could lift 10 lbs frequently and 20 lbs occasionally. Tr., at 80. Dr. Berner directly contradicted Dr. Hurtado's opinion as to whether

---

[4] It is possible that Dr. Hurtado erred here as there is no evidence in the record of plaintiff suffering limitations in her right arm. Dr. Hurtado may have meant to indicate that plaintiff had lost range of motion in her left arm. This would be more consistent with the record. That said, such an error would not affect the outcome here. The ALJ accounted for limitations in plaintiff's range of motion in her left arm. In any event, if Dr. Hurtado were, in fact, mistaken about plaintiff's dominant hand, it would only cast further doubt on his conclusions about her ability to work.

plaintiff's right arm was limited in its range of motion.     Accordingly, in order to reject Dr. Hurtado's opinion on this point, the ALJ needed only to provide "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31.  As for whether plaintiff would need to miss, on average, more than 5 days of work per month, Dr. Berner did not specifically address this question.  So arguably Dr. Berner did not contradict Dr. Hurtado on this point.  However, even if the Court holds the ALJ to the stricter standard that she provide "clear and convincing reasons" for rejecting Dr. Hurtado's opinion, the standard is met.[5]

The ALJ concluded Dr. Hurtado's opinion was entitled to "little weight" after considering appropriate factors.  Tr., at 28.  An ALJ need only accord controlling weight to a treating doctor's opinion, if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 404.1527(c)(2).  The ALJ determined that  Dr. Hurtado's opinion lacked support in the "diagnostic record, which [did] not indicate any degenerative changes in the neck, or any neurological deficits on examination or by electrodiagnostic changes."  Tr., at 29, 26.  The ALJ noted that while medical evidence substantiated a severe left shoulder impairment, it established no other musculoskeletal

---

[5]    Dr. Hurtado also included in his opinion diagnoses of depression and chronic pan syndrome but did not state that they produced any functional limitations for plaintiff.  The ALJ did not find these diagnoses to be severe impairments nor sources of additional functional limitations.  Based on the medical record, the ALJ determined that plaintiff's reported depression was situational, symptomatic for about six months in 2010, and "controlled by medications without specific treatment" from a specialist.  Tr., at 23, 31-32.  As for chronic pain disorder, the ALJ determined that plaintiff's reported pain could be attributed to her shoulder impairments and the record did not show plaintiff sought treatment after her surgery for this alleged syndrome. Tr., at 29.

disorder, and there was no evidence that plaintiff's right, dominant arm was anything but fully functional. Tr., at 26, 24. Moreover, she noted that the medical record did not suggest any impairment that would cause plaintiff to miss an average of more than five days of work each month. Tr., at 28-29. In addition, the ALJ found inconsistencies with substantial evidence in the record. For example, the ALJ noted that in 2008 and 2009, treating medical providers opined that plaintiff could work in jobs that required limited or no use of her left arm. Tr., at 26, 341-42. Although Dr. Hurtado opined that plaintiff's right arm was limited and that plaintiff could not perform even simple household chores, plaintiff testified at the hearing that, other than overuse, she had no difficulty with her right arm and that she could do housework but sometimes needed assistance. Tr., at 62, 460; *see* Tr., at 215-16. Based on the record, the ALJ was not required to grant controlling weight to Dr. Hurtado's opinion.

After determining that a treating doctor's opinion is not entitled to controlling weight, an ALJ considers a variety of other factors to determine what weight to accord the opinion, including the "length of the treatment relationship and the frequency of examination," "the nature and extent of the treatment relationship," and the opinion's consistency with the record as a whole. 20 C.F.R. § 404.1527(c)(2). The ALJ recognized that plaintiff and Dr. Hurtado had a long treatment relationship but noted that when Dr. Hurtado wrote his opinion, he had not examined plaintiff for 18 months. Tr., at 28. The ALJ concluded, "His lack of knowledge of her condition for such an extended period makes his estimation of the amount of time she would miss from work mere speculation." Tr., at 28. After the ALJ issued her decision, plaintiff submitted a letter from Dr. Hurtado explaining that

his office had treated plaintiff by telephone or in brief walk-in visits while other family members were seen in order to minimize plaintiff's medical expenses. Tr., at 496-502, 11-13. However, this additional evidence does not alter the fact that Dr. Hurtado did not examine plaintiff for 18 months prior to writing the medical opinion. The ALJ provided "clear and convincing" reasons for according little weight to Dr. Hurtado's opinion, citing lack of diagnostic support, lack of recent examination of plaintiff, and inconsistency with the record as a whole. The Court finds the ALJ did not err in according little weight to plaintiff's testimony or to the opinion of Dr. Hurtado concerning right-arm limitations and the number of workdays she would miss. Moreover, the ALJ supported her conclusions with substantial evidence from the record.

### III.  Plaintiff's Ability to Perform Work in the National Economy

Finally, plaintiff argues that ALJ erred at the last step of the disability analysis by failing "to meet [her] burden of proving that Plaintiff retains the ability to perform 'other work' in the national economy." Pl.'s Br., at 19. Plaintiff cites *Robbins v. SSA*, 446 F.3d 880 (9th Cir. 2005), for the proposition that "the ALJ may elicit testimony from a vocational expert, but the hypothetical posed to the VE must consider all of the claimant's limitations supported by the record." Pl.'s Br., at 19 (citing 466 F.3d at 886). On that basis, plaintiff argues the ALJ failed to meet her burden because, in framing her hypothetical description, she did not require the vocational expert to consider (1) plaintiff's need to lie down 3-4 times a week and the likelihood she would miss more than five days of work per month; (2) Dr. Hurtado's opinion that plaintiff was "permanently disabled"; and (3) Dr. Hurtado's opinion that plaintiff could not lift even 5 lbs with her left arm. Pl.'s Br., at 19-20.

Concerning plaintiff's first allegation of error, *Robbins* makes clear that "in hypotheticals posed to a vocational expert, the ALJ must only include those limitations supported by substantial evidence." 466 F.3d at 886; *see Osenbrock v. Apfel,* 240 F.3d 1157, 1165 (9th Cir. 2001). If an ALJ has properly determined that alleged limitations are not supported by substantial evidence in the record, the ALJ is not required to incorporate the alleged limitations into the hypothetical she poses to the vocational expert. *Osenbrock ,* 240 F.3d at 1165; *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015); *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006); *Brundidge v. Colvin*, 2013 WL 2468347, at *9 (D. Or. June 7, 2013). Accordingly, the ALJ here did not err in omitting from her hypothetical plaintiff's alleged need to nap most days of the week nor plaintiff's alleged need to miss more than 5 days of work per month. As the Court has already explained, the ALJ properly discounted these alleged limitations finding they were not supported by substantial evidence in the record.

Second, plaintiff alleges the ALJ erred by failing to include in the vocational hypothetical Dr. Hurtado's opinion that "based on his experience with Ms. Rosas, over a ten year history, she was 'permanently disabled with regards to both her chronic pain and chronic functional extremity disability.'" Pl.'s Br., at 19-20 (quoting Tr., at 497). However, Dr. Hurtado's statement appeared in a letter that plaintiff submitted to the Appeals Council after the ALJ issued her decision. Tr., at 11-13, 497. Accordingly, the ALJ could not have addressed the specific statement in her decision,

because she had not received it.[6]  That said, even if the ALJ had received this opinion before issuing her determination, she would not have been required to credit it or to incorporate it in her hypothetical to the vocational expert.  Whether a claimant is disabled is a determination reserved exclusively for the SSA.  20 C.F.R. § 404.1527(d).  A doctor's opinion stating a claimant is disabled is entitled to no "special significance."  20 C.F.R. § 404.1527(d)(3).  Had the ALJ received the letter from Dr. Hurtado before rendering her decision, she would have been required to consider it but not to grant it any controlling weight or special significance. SSR 96–5p, 1996 WL 374183, at *1. Here, the ALJ could not have accounted for a piece of evidence that was not yet in the record.

Lastly, plaintiff contends that the ALJ's "hypothetical was defective in that it failed to address Dr. Hurtado's opinion that plaintiff cannot lift as much as five pounds with her left arm." Pl.'s Br., at 20.  However, the ALJ did not reject Dr. Hurtado's opinion on this point, and, in fact, incorporated appropriate restrictions of plaintiff's use of her left arm into the vocational analysis. Tr., at 25, 27, 34.  At the hearing, the ALJ asked the vocational expert to suggest only jobs that could be performed without overhead reaching or pushing or pulling away from the body with left hand. Tr., at 69-70.  She clarified that the left arm and hand could only be used for stabilizing and balance purposes and not for lifting.  Tr., at 70 (verifying that, in the jobs suggested by the expert, the left "arm would not be used for pushing or pulling or lifting or carrying").  The resulting decision accounted for the left hand lifting  limitation and incorporated that limitation in the decision.

---

[6]  The Appeals Council, the administrative body which received the letter, considered it along with other new evidence but did not find that the augmented record warranted further review of the ALJ's decision.  Tr., at 1-6.  Accordingly, the Appeals Council denied review.

**RECOMMENDATION**

For the above reasons, the Commissioner's decision should be AFFIRMED and this action DISMISSED.

**SCHEDULING ORDER**

The above Findings and Recommendations will be referred to a United States District Judge for review.  Objections, if any, are due within fourteen (14) days.  If objections are filed, a response to the objections is due fourteen (14) days after the date the objections are filed and the review of the Findings and Recommendations will go under advisement on that date.

IT IS SO ORDERED.

DATED this 13th day of October, 2015.


/s/ Patricia Sullivan
_____
Patricia Sullivan
United States Magistrate Judge